No. 24-6193

_____

IN THE UNITED STATES COURT OF APPEALS
FOR THE NINTH CIRCUIT
_____

Ofir Hanan, Melanie Gillum,

Plaintiffs-Appellants,

v.

United States Citizenship and Immigration Services, et. al.

Defendants-Appellees.
_____

On Appeal from the U.S. District Court for the Central District of California
(District Court Case No. 4:23-cv-02414-HSG)

Haywood S. Gilliam, Jr., United States District Judge

_____

PLAINTIFFS-APPELLANTS' OPENING BRIEF
_____

Stacy Tolchin
Megan Brewer
LAW OFFICES OF STACY TOLCHIN
776 E. Green St.
Suite 210
Pasadena, California 91101
Telephone: (213) 622-7450
Facsimile: (213) 622-7233
Email: Stacy@tolchinimmigration.com
Email: Megan@tolchinimmigration.com
Attorneys for Plaintiffs-Appellants

## TABLE OF CONTENTS

I.     INTRODUCTION ........................................................1

II.    JURISDICTION ...........................................................2

III.   ISSUES PRESENTED ................................................2

IV.   STANDARD OF REVIEW ........................................3

V.    STATEMENT OF THE FACTS AND CASE ..................3

VI.   SUMMARY OF ARGUMENT ....................................7

VII.  LEGAL BACKGROUND ...........................................8

VIII. ARGUMENT ...........................................................11

    A.    THE BAR AT § 1154(c)(2) DOES NOT APPLY IF THERE WERE NO IMMIGRATION BENEFITS SOUGHT ......................................11

    B.    THE BOARD'S DECISION VIOLATES DUE PROCESS BECAUSE PLAINTIFF HANAN'S FIRST WIFE WAS NOT SUBJECT TO CROSS-EXAMINATION ..................................20

           1. . The Court Cannot Affirm the Board's Decision for a Reason Not Stated by the Agency ........................................23

           2. .......The Due Process Balancing Test in *Mathews v. Eldridge* Requires the Availability of Cross-Examination of Plaintiff Hanan's First Wife ................................................26

    C.    THE BOARD'S DECISION IS NOT SUPPORTED BY SUBSTANTIAL AND PROBATIVE EVIDENCE AND FAILED TO PROPERLY CONSIDER PLAINTIFF'S EVIDENCE .......................39

    D.    THE DENIAL OF ADJUSTMENT OF STATUS VIOLATES THE APA BECAUSE THE VISA PETITION SHOULD HAVE BEEN APPROVED ........................................49

IX.   CONCLUSION...........................................................49

## TABLE OF AUTHORITIES

### Federal Cases

Agyeman v. INS, 296 F.3d 871 (9th Cir.2002) .......................................................25

Amar v. Mayorkas, No. CV216752CBMADSX, 2022 WL 18228254 (C.D. Cal. Dec. 19, 2022).........................................................................................46

ASSE Int'l, Inc. v. Kerry, 803 F.3d 1059 (9th Cir. 2015).......................... 29, 30, 37

Avitan v. Holder, No. C-10-03288-JCS, 2011 WL 499956 (N.D. Cal. Feb. 8, 2011) .........................................................................................33

Baliza v. INS, 709 F.2d 1231 (9th Cir.1983).........................................................22

Baltazar-Alcazar v. I.N.S., 386 F.3d 940 (9th Cir. 2004).......................................38

Bark v. Immig. and Naturalization Serv., 511 F.2d 1200 (9th Cir. 1975)..... 9, 41,48

Boise Cascade Corp. v. U.S. E.P.A., 942 F.2d 1427 (9th Cir. 1991) ............... 12, 13

Bouarfa v. Mayorkas, No. 23-583, __ U.S.__ 2024 WL 5048700 (U.S. Dec. 10, 2024) .......................................................................................2

Brown v. Holder, 763 F.3d 1141 (9th Cir. 2014) ...................................... 29, 31, 37

Ching v. Mayorkas, 725 F.3d 1149 (9th Cir. 2013) ...................................... passim

Colmenar v. I.N.S., 210 F.3d 967 (9th Cir. 2000) ..................................................38

Corley v. United States, 556 U.S. 303, 129 S.Ct. 1558, 173 L.Ed.2d 443 (2009) ..12

Cunanan v. I.N.S., 856 F.2d 1373 (9th Cir. 1988)........................................... 21, 22

Davis v. Michigan Dept. of Treasury, 489 U.S. 803, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989) ........................................................................12

Deck v. Missouri, 544 U.S. 622, 125 S. Ct. 2007, 161 L. Ed. 2d 953 (2005).........38

Delcore v. Holder, No. 13 CV 8266, 2015 WL 1858363 (N.D. Ill. Apr. 20, 2015)47

Dep't of State v. Muñoz, __ U.S. __144 S. Ct. 1812 (2024). ..................... 28, 29, 32

Doyle v. City of Medford, 606 F.3d 667 (9th Cir. 2010) ........................................30

Dyer v. United States, 832 F.2d 1062 (9th Cir.1987).............................................18

Espinoza v. I.N.S., 45 F.3d 308 (9th Cir. 1995) ....................................................43

Foss v. Nat'l Marine Fisheries Serv., 161 F.3d 584 (9th Cir. 1998).......................28

Gavrilescu v. U.S. Dep't of Homeland Sec., No. 23-55036, 2024 WL 2862127 (9th Cir. June 6, 2024)................................................................... 23, 24, 26

Harisiades v. Shaughnessy, 342 U.S. 580, 72 S.Ct. 512, 96 L.Ed. 586 (1952).......29

Hernandez-Guadarrama v. Ashcroft, 394 F.3d 674 (9th Cir. 2005).......................21

Loper Bright Enterprises v. Raimondo, __ U.S. __, 144 S. Ct. 2244, 219 L.Ed.2d 832 (2024) ................................................................... 11, 14

Lopez v. Garland, 116 F.4th 1032 (9th Cir. 2024) .................................................11

Lopez-Chavez v. I.N.S., 259 F.3d 1176 (9th Cir. 2001) .........................................44

Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976) ..........8, 27

Mathews v. Eldridge, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), .............27

Miriyeva v. U.S. Citizenship & Immigr. Servs., No. 20-CV-2496 JLS (BGS) ......31

Montilla v. I.N.S., 926 F.2d 162 (2d Cir. 1991) ........................................38

N. Carolina Comm'n of Indian Affs. v. U.S. Dep't of Lab., 725 F.2d 238 (4th Cir.

    1984) ...............................................................................................26

Nakamoto v. Ashcroft, 363 F.3d 874 (9th Cir. 2004).............................................41

Navas v. INS, 217 F.3d 646 (9th Cir.2000)...........................................23

NB ex rel. Peacock v. D.C., 794 F.3d 31 (D.C. Cir. 2015) .....................................30

Perez-Guzman v. Lynch, 835 F.3d 1066 (9th Cir. 2016) ........................................14

Rashtabadi v. I.N.S., 23 F.3d 1562 (9th Cir. 1994) ................................................25

Renaudin v. Immigr. & Naturalization Serv., 516 F.2d 582 (8th Cir. 1975) ..........33

Rock River Health Care, LLC v. Eagleson, 14 F.4th 768 (7th Cir. 2021) ..............30

Ruhe v. Barr, No. 218CV03734ABAGRX, 2019 WL 4492953 (C.D. Cal. June 26,

    2019) ...............................................................................................33

Ry. Lab. Executives' Ass'n v. I.C.C., 784 F.2d 959 (9th Cir. 1986).......................25

Saidane v. INS, 129 F.3d 1063 (9th Cir.1997) ......................................21

Securities and Exchange Commission v. Chenery Corp., 332 U.S. at 196.. 2, 23, 25

Sigmon Coal Co. v. Apfel, 226 F.3d 291 (4th Cir. 2000) .......................................19

Simko v. Bd. of Immigr. Appeals, 156 F. Supp. 3d 300 (D. Conn. 2015).............47

Sun v. Ashcroft, 370 F.3d 932 (9th Cir. 2004) ......................................25

United States v. Garcia-Santana, 774 F.3d 528 (9th Cir. 2014) ............................13

United States v. Khidirov, 538 F. App'x 877 (11th Cir. 2013)...............................33

iv

United States v. Orellana-Blanco, 294 F.3d 1143 (9th Cir. 2002) ..........................40

Wagafe v. Trump, No. C17-0094-RAJ, 2017 WL 2671254 (W.D. Wash. June 21, 2017) ........................................................................................31

Wedges/Ledges of California, Inc. v. City of Phoenix, Ariz., 24 F.3d 56 (9th Cir. 1994) ..............................................................................30

Wigginton v. Jones, 964 F.3d 329 (5th Cir. 2020) .................................................30

Zerezghi v. U.S. Citizenship and Immig. Services, 955 F.3d 802 (9th Cir. 2020) ................................................................................ passim

### Federal Statutes

"Immigration Marriage Fraud Amendments of 1986," (IMFA) Pub. L. 99–639 (HR 3737), 100 Stat 3537 (Nov. 10, 1986) ................................................14

8 U.S.C. § 1151(b) ..................................................................................8

8 U.S.C. § 1154(b) ................................................................................27

8 U.S.C. § 1154(c). ........................................................................ passim

8 U.S.C. § 1227(a) ................................................................................37

8 U.S.C. § 1255(a). ..............................................................................49

28 U.S.C. § 1291 ..................................................................................2

### Federal Regulations

8 C.F.R. § 204.2 ........................................................................ 9, 10, 39

8 C.F.R. § 1003.1(b)(5) ..........................................................................10

v

<u>Agency Decisions</u>

<u>Matter of Anselmo</u>, 16 I&N Dec. 152 (BIA 1977)....................................................15

<u>Matter of P. Singh</u>, 27 I. & N. Dec. 598 (BIA 2019) ...................................... passim

<u>Matter of Phillis</u>, 15 I&N Dec. 385 (BIA 1975).......................................................34

<u>Matter of R. I. Ortega</u>, 28 I. & N. Dec. 9 (BIA 2020) ..............................................13

<u>Matter of Oseguera</u>, 17 I. & N. Dec. 386, 387 (BIA 1980)............................. 15, 17

<u>Matter of Rubino</u>, 15 I. & N. Dec. 194 (BIA 1975) ......................................... 15, 19

<u>Matter of Slade</u>, 10 I. & N. Dec. 128 (BIA 1962) ...................................................19

<u>Miscellaneous</u>

H.R. Rep. No. 906, 99TH Cong., 2ND Sess. 1986, 1986 U.S.C.C.A.N. 5978, 5983,

1986 WL 31959 (Sept. 26, 1986). ......................................................................16

I.    <u>INTRODUCTION</u>

Plaintiffs-Appellants are a married couple with a small child who challenge the denial of their visa petition due to the "marriage fraud" bar at 8 U.S.C. § 1154(c)(2). When Plaintiff Hanan, a noncitizen, was 23 years old, he married a United States citizen, Margarita Jaimes, who was 19 years old. Plaintiff Hanan and Ms. Jaimes never filed any immigration paperwork based on their marriage. They had a volatile and short-lived marriage, and divorced after less than two years.

It has been more than 22 years since the divorce, and Plaintiff Hanan has now been married to Plaintiff Gillum, a United States citizen, for almost 11 years. Despite this marriage and their young child, the Board of Immigration Appeals (BIA), found that the marriage fraud bar precluded approval of the visa petition filed by Plaintiff Gillum on behalf of Plaintiff Hanan.

No immigration benefit was ever sought in that first marriage to Ms. Jaimes, but Plaintiffs now face the separation of their family because the marriage alone was found to be a "conspiracy" to commit marriage fraud to evade immigration laws. Plaintiffs seek review of this finding before the Ninth Circuit, requesting that they be permitted to keep their family together and for the Court to review whether this short-lived youthful marriage warrants the permanent separation of Plaintiffs' family.

II.     <u>JURISDICTION</u>

The Court has jurisdiction over Plaintiffs' appeal of the District Court's denial of Plaintiffs' motion for summary judgment and the grant of summary judgment in favor of Defendants. ER-5- ER34.  A final order was entered on September 25, 2024 for purposes of 28 U.S.C. § 1291. ER-3.

The denial of a visa petition is not subject to discretion, and is subject to judicial review. <u>Bouarfa v. Mayorkas</u>, No. 23-583, __ U.S.__ 2024 WL 5048700, at *6 (U.S. Dec. 10, 2024); <u>Zerezghi v. United States Citizenship & Immigr. Servs.</u>, 955 F.3d 802, 807 (9th Cir. 2020).

III.    <u>ISSUES PRESENTED</u>

1. Whether the Marriage Fraud Bar at 8 U.S.C. § 1154(c)(2) applies when no immigration benefit is sought;

2. Whether the <u>SEC v. Chenery Corp.</u>, 332 U.S. 194, 196 (1947), doctrine applies to procedural due process arguments;

3. Whether procedural due process required the availability of Plaintiff Hanan's first wife for cross-examination before the visa petition could be denied based on 8 U.S.C. § 1154(c)(2);

    4.   Whether substantial and probative evidence established by more than a preponderance of the evidence that Plaintiff Hanan and Ms. Jaimes engaged in marriage fraud;

    5.   Whether the BIA properly applied the burden shifting framework and properly considered Plaintiffs' evidence of the bona fides of the marriage between Ms. Jaimes and Plaintiff Hanan.

## IV.   STANDARD OF REVIEW

This Court reviews <u>de novo</u> the District Court's determination that 8 U.S.C. § 1154(c)(2) applies to Plaintiffs' case. The Court "reviews de novo whether the BIA violated procedural due process in adjudicating an I-130 petition (thereby acting 'not in accordance with law')." <u>Zerezghi v. United States Citizenship & Immigr. Servs.</u>, 955 F.3d 802, 807 (9th Cir. 2020) <u>citing</u> <u>Ching v. Mayorkas</u>, 725 F.3d 1149, 1155–59 (9th Cir. 2013). The BIA's decision to impose a marriage-fraud penalty is subject to this Court's review as "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). ER-40 to ER-42.

## V.   STATEMENT OF THE FACTS AND CASE

Plaintiff Hanan is a 36-year-old citizen of Israel who has resided in the United States since 2008. ER-386.  He is married to Plaintiff Gillum, a United States citizen. ER-427; 161;162.  They have been married since January 4, 2014

and have one child together, a United States citizen. ER-162.

Plaintiff Hanan was married to Margarita Jaimes when he was 23 years old and she was 19 years old. ER-386. They were married on May 15, 2010 and were divorced on February 14, 2012. ER-386. No immigration paperwork was filed for Plaintiff Hanan based on this marriage. ER-42; 87.

On July 6, 2011, Plaintiff Hanan was interviewed by the California Bureau of Gambling Control (BGC) in regards to an investigation into illegal slot machines. At that time he was questioned about his marriage to Ms. Jaimes. ER-106-117.

On September 16, 2014, after their January 4, 2014 marriage, Plaintiff Gillum filed an I-130 immigrant relative visa petition for Plaintiff Hanan, and he filed the corresponding application for adjustment of status. ER-177; 379. Plaintiff Hanan appeared for an interview before USCIS on March 30, 2017. ER-175. At that interview, USCIS made Plaintiff Hanan and Plaintiff Gillum aware for the first time that USCIS had a statement from Ms. Jaimes saying that she and Plaintiff Hanan had engaged in marriage fraud. ER-167 to ER-169.

When confronted with the statement of Ms. Jaimes, Plaintiff Hanan prepared a sworn statement on March 30, 2017 explaining that he met Ms. Jaimes through friends when he was only 23 years old and she was age 19, that he was attracted to her, and he intended to build a future with her. ER-163 to ER-165.

Further, the statement explained that Ms. Jaimes was very emotional in their relationship and abused alcohol, even though she was underage. ER-163 to ER-164. Plaintiff Hanan rebutted the allegation that the marriage was entered into solely for the purposes of an immigration benefit, and explained that Ms. Jaimes was likely angry due to the divorce, and that she was unstable and abused alcohol. Id.

USCIS issued three Notices of Intent to Deny (NOID) the petition. The first NOID was issued on June 19, 2017 and contained a copy of Ms. Jaimes' alleged admission to marriage fraud. ER-159; 166. USCIS timely received Plaintiffs' response to the NOID on July 17, 2017, which contained photos and affidavits pertaining to the legitimacy of the marriage between Plaintiff Hanan and Ms. Jaimes. ER-137. These included 1) photos of plaintiff Hanan with Ms. Jaimes at their wedding and of them meeting his father and sister and together over Christmas; 2) a sworn statement from Plaintiff Hanan's father, Mordehay Hanan; 3) a sworn statement from plaintiff Hanan's uncle, Yosef Califa; and 4) a sworn statement from Jonathan Shiloh Saidman, a close friend of Plaintiff Hanan's who was present at his wedding to Jaimes. ER-142 to ER-158.

The second NOID was issued on July 24, 2020 and contained a redacted summary of the BGC investigation report without the full report attached, and a response to the second NOID was timely received by USCIS on October 15, 2020.

ER-122 to ER-130. The third NOID was issued on February 26, 2021 and contained a partially redacted copy of the BGC report, and a response to the NOID was received by USCIS on May 14, 2021. ER-93; ER-100, ER-106.

Plaintiffs timely responded to all three of the NOIDs and repeatedly contested the allegation of marriage fraud. They also requested that Ms. Jaimes be made available for cross examination in their responses dated May 12, 2020, October 13, 2020, and July 14, 2017. ER-95, ER-123, ER-138.

On March 10, 2022, USCIS denied the I-130 visa petition filed by Plaintiff Gillum on behalf of Plaintiff Hanan. ER-86 to ER-92. The application for adjustment of status was denied that same day because the visa petition was denied. ER-340; E.R-364; ER-66. No appeal is available of the denial of the application for adjustment of status.

Plaintiffs timely appealed the denial of the visa petition to the Board of Immigration Appeals and requested remand for consideration of the new evidence. ER-46; ER-63 to ER-78. On April 12, 2023, the Board of Immigration Appeals affirmed the March 10, 2022 decision of USCIS. ER-39 to ER-42. The decision found that 8 U.S.C. § 1154(c)(2) applied even though no immigrant visa petition was filed in the first marriage. ER-42. It also found that Plaintiffs had the burden of producing a sworn statement from Ms. Jaimes and to "ask" her to "submit to cross-examination." ER-42. Last, the Board found that there was substantial and

probative evidence that the first marriage was entered into for the purpose of evading immigration laws. ER-42.

Plaintiffs sought review of the BIA's April 12, 2023 denial of the visa petition, and the denial of Plaintiff Hanan's application for adjustment of status, before the U.S. District Court. Case No. 4:23-cv-2414-HSG (N.D. Cal). ER-465. The parties filed cross-motions for summary judgment. On September 25, 2024, the District Court granted summary judgment in favor of Defendants. ER-5 to ER-34.

Plaintiffs subsequently appealed that decision to this Court, and now file their Opening Brief in support of that appeal. ER-462.[1]

VI.    <u>SUMMARY OF ARGUMENT</u>

This Court should reverse the decision of the District Court for three reasons. First, the Court should find that the marriage fraud bar at 8 U.S.C. § 1154(c)(2) only applies when an immigration benefit is sought. As Plaintiff Hanan did not seek a benefit based on his first marriage, that permanent bar to the approval of a petition cannot apply.

Second, the Court should find that Plaintiffs' due process rights were violated when the BIA relied on Ms. Jaimes' "admission" of marriage fraud

---

[1] In addition, the certified administrative record was originally filed concurrently with a joint motion to file under seal on September 12, 2023. ER-467. However, the District Court's September 25, 2024 order denied the motion to file under seal and ordered that the redacted certified record be filed in the proceeding. ER-34. Defendants filed the redacted record on October 2, 2024. ER-37. That redacted certified administrative record is now included in the record on appeal. <u>Id.</u>

7

without making her available for cross-examination. Remand is required because the Court cannot affirm the BIA's decision distinguishing <u>Ching v. Mayorkas</u>, 725 F.3d 1149, 1153 (9th Cir. 2013). Alternatively, the Court must find that <u>Ching</u> itself requires the availability of cross-examination of Ms. Jaimes when the due process balancing test set forth in <u>Mathews v. Eldridge</u>, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), is applied.

Third, the Board's decision must be reversed because the government did not establish by more than a preponderance of the evidence that the marriage between Ms. Jaimes and Plaintiff Hanan was entered into for purposes of immigration fraud. Further, the Board failed to properly shift the burden of proof to Plaintiffs to counter that finding, if in fact the marriage fraud burden had been met, and failed to consider Plaintiffs' evidence in the record that the marriage was bona fide.

VII.   <u>LEGAL BACKGROUND</u>

A United States citizen may file an I-130 petition to classify their spouse as the immediate relative of a United States citizen, in order to make a visa immediately available for purposes of granting lawful permanent residency. 8 U.S.C. § 1151(b).  In order to confer benefits, the marriage must be bona fide and not fraudulent. A bona fide marriage is one in which the spouses intended to

establish a life together at the time they married.  <u>Bark v. Immig. and Naturalization Serv</u>., 511 F.2d 1200, 1201 (9th Cir. 1975).  A fraudulent marriage is one which is entered into with the purpose of evading the immigration laws. 8 C.F.R. § 204.2.

The statute at 8 U.S.C. § 1154(c) is a permanent bar to the approval of a petition where there was a finding of prior marriage fraud.  Therefore, "regardless of the strength of the current marriage," and even if the current marriage "is unquestionably bona fide," 'no petition shall be approved' if USCIS determines that the noncitizen spouse previously entered into a marriage 'for the purpose of evading the immigration laws.' " <u>Zerezghi v. United States Citizenship & Immigr. Servs</u>., 955 F.3d 802, 804 (9th Cir. 2020) (quoting 8 U.S.C. § 1154(c)).

There are two subsections within § 1154(c).  Section 1154(c)(1) provides that no petition, including a subsequent petition, may be approved if the noncitizen "has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws."  Section 1154(c)(2) bars the approval of a petition where "the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the

9

immigration laws." Section 1154(c)(1) requires a marriage and the filing of a visa petition in order for the bar to apply. Section 1154(c)(2) requires an attempt or conspiracy to enter into a marriage for the purpose of evading the immigration laws. Section 1154(c)(2) has *never* been applied in a precedent decision to a marriage where no visa petition has been filed.

USCIS will deny a petition for immigrant visa classification filed on behalf of any noncitizen for whom there is "substantial and probative evidence of" an attempt or conspiracy "to enter into a marriage for the purpose of evading the immigration laws." 8 C.F.R. § 204.2(a)(1)(ii). The substantial-and-probative-evidence standard is a standard of proof, which is at least as high as a preponderance of the evidence. Zerezghi v. U.S. Citizenship and Immig. Services, 955 F.3d 802, 816 (9th Cir. 2020). Substantial and probative evidence requires a finding that "it is more than probably true that the marriage is fraudulent." Matter of P. Singh, 27 I. & N. Dec. 598, 607 (BIA 2019).

The approval of an I-130 petition is nondiscretionary. Zerezghi v. U.S. Citizenship and Immig. Services, 955 F.3d at 808. If a petition is denied by USCIS, then the proper forum is an administrative appeal to the Board of Immigration Appeals. 8 C.F.R. § 1003.1(b)(5). If the BIA denies the appeal, then an action may be filed in District Court under the APA. See Ching v. Mayorkas, 725 F.3d 1149, 1153 (9th Cir. 2013).

VIII.  <u>ARGUMENT</u>

A.    THE BAR AT § 1154(c)(2) DOES NOT APPLY IF THERE WERE
NO IMMIGRATION BENEFITS SOUGHT

There are two components to the bar to at § 1154(c).  Section (c)(1) requires

a marriage and section (c)(2) does not, but both require that the parties seek an

immigration benefit. In this case, Defendants applied § 1154(c)(2) to Plaintiff

Hanan's first marriage, in which no immigration benefit was sought. ER-42.  This

is a violation of the statute.

After the Supreme Court's decision in <u>Loper Bright Enterprises v.</u>

<u>Raimondo</u>, __ U.S. __, 144 S. Ct. 2244, 2261, 2273, 219 L.Ed.2d 832 (2024), the

Court no longer follows the two-step approach set forth by <u>Chevron U.S.A. Inc. v.</u>

<u>Natural Res. Def. Council, Inc</u>., 467 U.S. 837, 842 (1984); this Court is left to

interpret the meaning of 8 U.S.C. § 1154(c)(2) independently and without

deference to the agency's interpretation. <u>Lopez v. Garland</u>, 116 F.4th 1032, 1042

(9th Cir. 2024) (after <u>Loper Bright Enterprises</u>, "we undertake the statutory

analysis independently, giving proper respect but not controlling deference to the

views of the BIA.")

"[S]tatutes, no matter how impenetrable, do—in fact, must—have a single,

best meaning." <u>Loper Bright Enters. v. Raimondo</u>, 144 S. Ct. at 2266. Under

accepted canons of statutory interpretation, [the Court] must interpret statutes as a

whole, giving effect to each word and making every effort not to interpret a

provision in a manner that renders other provisions of the same statute inconsistent, meaningless or superfluous." <u>Boise Cascade Corp. v. U.S. E.P.A.</u>, 942 F.2d 1427, 1432 (9th Cir. 1991). The Court should avoid reading a provision that would make any part of it "inoperative or superfluous, void or insignificant." <u>Corley v. United States</u>, 556 U.S. 303, 314, 129 S.Ct. 1558, 173 L.Ed.2d 443 (2009) (simplified). It is a "fundamental canon of statutory construction that the words of a statute must be read in their context and with a view to their place in the overall statutory scheme." <u>Davis v. Michigan Dept. of Treasury</u>, 489 U.S. 803, 809, 109 S.Ct. 1500, 103 L.Ed.2d 891 (1989).

> The relevant statute states:
>
> Notwithstanding the provisions of subsection (b) no petition shall be approved if:
>
> (1) the alien has previously been accorded, or has sought to be accorded, an immediate relative or preference status as the spouse of a citizen of the United States or the spouse of an alien lawfully admitted for permanent residence, by reason of a marriage determined by the Attorney General to have been entered into for the purpose of evading the immigration laws, or
>
> (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws.

8 U.S.C. § 1154(c). Section 1154(c)(1) clearly only applies *where there is a marriage*, and does not apply in cases where there was a fiancé who attempted to benefit, or benefitted, from United States immigration laws, as discussed below.

Hence, § 1154(c) must be read as a whole, so that § 1154(c)(2) does not entirely subsume § 1154(c)(1).

The only way to read the statutes to make sense is where § 1154(c)(1) applies to cases where there is a marriage, and § 1154(c)(2) applies where there has been no legal marriage, and both require the filing of an application or petition for an immigration benefit. Boise Cascade Corp. v. United States EPA, 942 F.2d 1427, 1432 (9th Cir.1991) ("[i]t is an accepted canon of statutory interpretation that we must interpret the statutory phrase as a whole, giving effect to each word and not interpreting the provision so as to make other provisions meaningless or superfluous.") If § 1154(c)(2) applies where there is no marriage *and* no immigration benefit sought, then § 1154(c)(1) has no meaning at all.

A "conspiracy" requires an "overt act." United States v. Garcia-Santana, 774 F.3d 528, 543 (9th Cir. 2014); Matter of R. I. Ortega, 28 I. & N. Dec. 9, 12 (BIA 2020) ("a conspiracy requires an agreement to enter into a marriage for the purpose of evading the immigration laws and an overt act in furtherance of that agreement."). Hence, for § 1154(c)(2) to have meaning, the overt act could constitute the marriage itself (as the Board found in this case), or it could constitute the filing of an immigration benefit, just as the Board found in Matter of R. I. Ortega, 28 I. & N. Dec. at 14, where there was only an engagement and no marriage. And, if the marriage itself is *not* an overt act, then (c)(2) cannot apply to

Plaintiffs' case at all, where there also was no immigration benefit sought. If only a marriage, and no immigration benefit, is included in (c)(2), however, then (c)(1) itself is left without any meaning.

This District Court dismissed this argument, finding that "this overlap would exist whether or not the Court assumes that (c)(2) requires a noncitizen to seek immigration benefits." ER-13. That is incorrect. Plaintiffs' reading of the statute is that (c)(1) applies to marriages and (c)(2) applies to fiancés, and both provisions require that the parties seek immigration benefits. That is the clearest reading of the statute to afford it the "single, best meaning." Loper Bright Enters. v. Raimondo, 144 S. Ct. at 2266. Otherwise, if (c)(2) applies to cases of marriages where no immigration benefit is sought, then (c)(1), which requires the filing of an immigration benefit, is rendered superfluous.

In interpreting the meaning of a statute, the Court may look to Congressional intent.  Perez-Guzman v. Lynch, 835 F.3d 1066, 1076 (9th Cir. 2016). Section 4 of the "Immigration Marriage Fraud Amendments of 1986," (IMFA) Pub. L. 99–639 (HR 3737), 100 Stat 3537 (Nov. 10, 1986), was created to close two "loopholes"  § 1154(c), which were brought to light by agency precedent.

 First, Congress added the "sought to be accorded," language after the "previously been accorded" language in § 1154(c)(1). See Matter of Oseguera, 17

14

I. & N. Dec. 386, 387 (BIA 1980) ("before approval of a visa petition can be denied pursuant to section 204(c) [prior version], it must be established that a fraudulent marriage was entered into and that the beneficiary was issued a visa as a nonquota or preference immigrant on the basis of that marriage."); Matter of Rubino, 15 I. & N. Dec. 194, 195 (BIA 1975) (finding that the prior version of 8 U.S.C. § 1154(c) did not apply where the noncitizen's prior visa petition based on a fraudulent marriage was approved but he had not been "issued a visa or granted adjustment of status on the basis of that earlier petition.").  This ensured that the penalties would apply to individuals who filed fraudulent applications for immigration benefits, even if the benefits were not ultimately granted.

Second, Congress added § 1154(c)(2), applying marriage fraud penalties to individuals who filed fraudulent fiancé petitions, even if they never married. This was necessary because prior BIA precedent established that such individuals were not subject to marriage fraud penalties. See Matter of Anselmo, 16 I&N Dec. 152, 153 (BIA 1977) ("In the absence of an actual marriage, section 204(c) [8 U.S.C. § 1154(c) does not apply."); Matter of Concepcion, 16 I. & N. Dec. 10, 11 (BIA 1976) (finding that the prior version of § 1154(c) did not apply if there was no legal marriage). The purpose of IMFA § 4 was "to insure that aliens who unsuccessfully sought immigration benefits through marriage fraud, may never receive immediate relative or preference status."  H.R. Rep. No. 906, 99TH Cong.,

2ND Sess. 1986, 1986 U.S.C.C.A.N. 5978, 5983, 1986 WL 31959 (Sept. 26, 1986). Further, the bill was enacted to do "away with the distinction between fiances and other aliens whose benefits are based on marriage. Commonly, a fiance who does marry the petitioning spouse will immediately terminate the marriage, remarry, and file a preference petition for another alien. This significant loophole must be closed, and the bill would do that." 1986 U.S.C.C.A.N. at 5982.[2] Unlike beneficiaries of I-130 spousal petitions, beneficiaries of I-129F fiancé petitions receive an immigration benefit prior to marriage in that they are granted a visa to enter the United States in order to marry. Prior to IMFA § 4, a fraudulent fiancé

---

[2]      The District Court cites to a House Report that bars noncitizens from immigrating where they "conspired to engage in a fraudulent marriage or [have] attempted to obtain immigration benefits on the basis of such marriage." ER-16 citing H.R. REP. 99-906, 10, 1986 U.S.C.C.A.N. 5978. That statement, however, is still not clear as to Congressional intent. Further on in the House Report, the intent of the addition of § 1154(c)(2) is expressed:

> The bill also does away with the distinction between fiances and other aliens whose benefits are based on marriage. Commonly, a fiance who does marry the petitioning spouse will immediately terminate the marriage, remarry, and file a preference petition for another alien. This significant loophole must be closed, and the bill would do that.

Further, in describing Section 4 of IMFA, the Report states "This section amends Section 204(c) of the Act to insure that aliens who unsuccessfully sought immigration benefits through marriage fraud, may never receive immediate relative or preference status." H.R. REP. 99-906, 11, 1986 U.S.C.C.A.N. 5978, 5983. Hence the Report is clear that Section 4 was to apply to noncitizens who sought immigration benefits.

16

who traveled to the United States and never married was not subject to the bar for marriage fraud.

The agency decisions in <u>Matter of Oseguera</u>, 17 I. & N. Dec. 386, 387 (BIA 1980), <u>Matter of Rubino</u>, 15 I. & N. Dec. 194, 195 (BIA 1975), <u>Matter of Anselmo</u>, 16 I&N Dec. 152, 153 (BIA 1977), and <u>Matter of Concepcion</u>, 16 I. & N. Dec. 10, 11 (BIA 1976) provide a roadmap as to the reasoning behind IMFA § 4.

The District Court rejected Plaintiffs' argument, stating that § 1154(c)(2) says nothing about fiancé visas specifically, or about "seeking or being accorded an immigration benefit of any kind." ER-12. Rather, the Court found that the failure to include the "immigration benefit" language in § 1154(c)(2) indicated Congress' intent. ER-13. A review of the legislation itself, however, shows that section (c)(2) was meant to be a modification of (c)(1), to essentially not require a marriage, but still require the other elements of (c)(1):

SEC. 4. RESTRICTIONS ON FUTURE ENTRY OF ALIENS INVOLVED WITH MARRIAGE FRAUD.

(a) IN GENERAL. — Section 204(c) of the Immigration and Nationality Act (8 U.S.C. 1154(c)) is amended —

(1) by inserting "(1)" after "if",

(2) by inserting ", or has sought to be accorded," after "previously been accorded", and

17

> (3) by inserting before the period at the end the following: ", or (2) the Attorney General has determined that the alien has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws".

> (b) EFFECTIVE DATE. — The amendment made by subsection (a) "8 USC 1154 note" shall apply to petitions filed on or after the date of the enactment of this Act.

This reading is supported by IMFA § 4(b), which applies the new amendments to "petitions filed on or after the date of the enactment of this Act." This effective date language supports a reading of the statute *that requires the filing of a petition for either section of § 1154(c) to apply.* In addition, IMFA § 4(a)(3)'s addition of § 1154(c)(2) demonstrates that the conspiracy component is considered a modification broadening the scope of § 1154(c)(1) which otherwise requires a marriage.

While the District Court notes that Congress did not include the benefits language in section (c)(2), it offered no plausible reading of § 1154(c)(1) that would not render it superfluous. ER-13 ("Plaintiffs' interpretation would require the Court to ignore the plain language of § 1154(c) and essentially rewrite the statute.") The statute must be read in order to give meaning to § 1154(c)(1). "The plain meaning governs unless a clearly expressed legislative intent is to the contrary, or unless such plain meaning would lead to absurd results." Dyer v. United States, 832 F.2d 1062, 1066 (9th Cir.1987) (citation omitted)."

18

The only non-superfluous interpretation that of § 1154(c)(1) that the District Court offers is a case where only the noncitizen, and not their spouse, entered into marriage for immigration purposes and, therefore, there was no conspiracy. ER-14. This reading of § 1154(c)(1) involves the engagement of mental gymnastics to find a meaning for a provision that has existed in the Immigration and Nationality Act since 1961. Matter of Slade, 10 I. & N. Dec. 128, 133 (BIA 1962); Matter of Frisone, 10 I. & N. Dec. 117, 120 (BIA 1962). The District Court's reading of § 1154(c)(1) is limited to only cases where the noncitizen was the sole party engaged in marriage fraud, which is neither in the clear text of the statute or supported by the legislative history.

The District Court next goes on to explain that Congress could have simply amended § 1154(c)(1) to include fiancés, without a need to add § 1154(c)(2). ER-14. The Court's job, however, is to "determine the meaning of the statute passed by Congress, not whether wisdom or logic suggests that Congress could have done better." Sigmon Coal Co. v. Apfel, 226 F.3d 291, 308 (4th Cir. 2000), aff'd sub nom. Barnhart v. Sigmon Coal Co.., 534 U.S. 438, 122 S. Ct. 941, 151 L. Ed. 2d 908 (2002).

Hence, the legislative history of IMFA § 4 is enough to establish that Congress intended that 1154(c)(2) apply to those who sought immigration benefits, and that the amendment was targeted at beneficiaries of fiancé petitions who

sought immigration benefits in the United States but never married, and who

otherwise did not fall under the prior version of 8 U.S.C. § 1154(c) which required

a marriage. Contrary to the District Court's opinion, this is not a rewriting of the

statute. It is a reading of § 1154(c)(2) to broaden § 1154(c)(1) to fiancé visas,

something that is fully supported by legislative history.

      B.     THE BOARD'S DECISION VIOLATES DUE PROCESS BECAUSE
             PLAINTIFF HANAN'S FIRST WIFE WAS NOT SUBJECT TO
             CROSS-EXAMINATION

If the Court finds that 8 U.S.C. § 1154(c)(2) applies to marriages where no

immigration benefit was sought, then it should conclude that Plaintiffs' due

process rights were violated because USCIS relied on the sworn statement of

Plaintiff Hanan's fist wife, Ms. Jaimes, who was not made available for cross-

examination. "Where a petitioner of an immediate relative petition proves that his

marriage meets the requirements for the approval of an I–130, he is entitled, as a

matter of right, to the approval of his petition." Ching v. Mayorkas, 725 F.3d

1149, 1155 (9th Cir. 2013).  In Ching, the Ninth Circuit held that this right creates

an entitlement to the protections of procedural due process, and this includes the

right to cross examination of a prior spouse, where USCIS relied on that spouse's

admission of marriage fraud to deny the visa petition.  Id. at 1159.

Plaintiffs' due process rights were violated because Ms. Jaimes, who

allegedly signed a sworn statement confessing to marriage fraud, was not available

for cross-examination. ER-118 to ER-121. The Board rejected this claim, stating that once Plaintiff Hanan was apprised of his first wife's statement, he "could have asked the first wife to submit to cross-examination and could have provided that sworn statement to the Director." ER-42. That conclusion does not comply with Ching and does not meet the requirements of due process.  If Defendants are to rely on the first wife's statement, then Ching requires that she be made available by the government for cross examination.  The Board put the burden on Plaintiffs to produce a contrary statement from Ms. Jaimes, but that was entirely improper. Ching, 725 F.3d at 1159 ("due process required a hearing with an opportunity for Ching to confront the witnesses against her.")

It is well established in Ninth Circuit precedent that the government must produce a witness for cross examination if it relies on hearsay that is otherwise fundamentally unfair.  Hernandez-Guadarrama v. Ashcroft, 394 F.3d 674, 681 (9th Cir. 2005); Saidane v. INS, 129 F.3d 1063, 1065 (9th Cir.1997); Cunanan v. I.N.S., 856 F.2d 1373, 1375 (9th Cir. 1988). It is the government's burden to produce the witness. Hernandez-Guadarrama v. Ashcroft, 394 F.3d at 681 (the government may not "use an affidavit from an absent witness unless the INS first establishes that, despite reasonable efforts, it was unable to secure the presence of the witness at the hearing.") (internal citations omitted).

21

Even if the witness is not available for cross-examination, the hearsay statement may not be relied upon if its admission would be fundamentally unfair. In fact, the circumstances of this case are remarkably similar to the facts of Cunanan v. I.N.S., 856 F.2d at 1375, where the Ninth Circuit addressed a case involving voluntary departure where the Form I-213 relied on statements from a former spouse who stated that the marriage between herself and the petitioner was not a bona fide marriage. The Ninth Circuit noted that while hearsay was in some circumstances admissible in deportation proceedings, the test for "admissibility is whether the hearsay statement is 'probative' and whether its admission is 'fundamentally fair.'" Cunanan v. I.N.S., 856 F.2d at 1374 citing Baliza v. INS, 709 F.2d 1231, 1233 (9th Cir.1983). The Court further found that it would be fundamentally unfair to rely on the hearsay statements within the Form I-213 without making the ex-wife available for cross-examination. The Court stated:

> The BIA nevertheless used these hearsay documents to turn down Cunanan's request to depart the country voluntarily, without allowing him a reasonable opportunity to cross-examine the government's opposing witness. Because the government failed to make any reasonable effort to produce Sandra Cesa, its hearsay declarant, for cross-examination, the BIA's reliance on the hearsay documents was fundamentally unfair. The BIA therefore abused its discretion in denying petitioner voluntary departure.

Cunanan v. I.N.S., 856 F.2d at 1375.

The District Court's decision in this case refuses to apply the Ching decision to require cross-examination. ER-28. However, this is a case that clearly

requires the application of <u>Ching's</u> mandate, as USCIS could not meet its heavy

burden without relying on the sworn statement of Ms. Jaimes. Notably, in

<u>Gavrilescu v. U.S. Dep't of Homeland Sec.</u>, No. 23-55036, 2024 WL 2862127 (9th

Cir. June 6, 2024) (unpublished), the Court criticized USCIS for failing to conduct

*any* <u>Ching</u> hearings "in the decade since the decision" and has failed "to inform

applicants of their right under <u>Ching</u> and to provide a mechanism to implement that

right." <u>Id.</u> at *1.[3] This is clearly a case where the agency should have made the

declarant available for cross-examination before issuing a decision under 8 U.S.C.

§ 1154(c).

### 1.    The Court Cannot Affirm the Board's Decision for a Reason Not Stated by the Agency

This Court may only affirm the Board's decision based on the reasons set

forth by the agency.  <u>SEC v. Chenery Corp.</u>, 332 U.S. 194, 196 (1947); <u>Navas v.</u>

<u>INS</u>, 217 F.3d 646, 658 n. 16 (9th Cir.2000).  Here, the Board held that if Plaintiffs

desired to cross-examine Ms. Jaimes they had to ask her to submit a separate sworn

---

[3] The appeal was denied in <u>Gavrilescu</u> because there was substantial and probative evidence of marriage fraud in the record independent of the hearsay statement. In this case, the Court should consider USCIS' failure to comply with <u>Ching's</u> due process requirements when Plaintiffs *did* request cross-examination of Plaintiff Hanan's first wife, and there was not substantial and probative evidence of marriage fraud in the record independent of the hearsay statement. ER-95; ER-123; ER-138.

statement to the director. ER-42. Such a finding is directly contrary to the law of

this Circuit in Ching, and the error requires reversal.

The District Court found that the Board's decision was not limited to this

reasoning, and that the Board instead found that due process does not require

cross-examination. ER-19.  That is not the case. A review of the Board's decision

shows that the only discussion of the cross-examination issue is the following

statement:

> On appeal, the petitioner argues that a fraudulent marriage finding cannot be
> made because the first wife was not subject to cross-examination. However,
> once apprised of the first wife's sworn statement the petitioner could have
> asked the first wife to submit to cross-examination and could have provided
> that sworn statement to the Director.

ER-19. There is no other discussion of Plaintiffs' due process rights or cross-

examination. This is not a decision that can be affirmed by the Court when it flies

in the face of Ching. USCIS cannot place the burden on Plaintiffs to produce the

declarant for cross-examination when USCIS relied on the sworn statement that it

solicited from her itself.

The District Court judge also found that the Chenery doctrine does not apply

to procedural due process claims where there is no deference to the agency. It must

apply, however, because litigants are still required to exhaust the Ching claim

before the Board before raising it in federal court.  Gavrilescu v. U.S. Dep't of

Homeland Sec., No. 23-55036, 2024 WL 2862127 (9th Cir. June 6, 2024)

24

(unpublished). Caselaw is clear that procedural due process claims must be raised

before the agency. Agyeman v. INS, 296 F.3d 871, 877 (9th Cir.2002) (stating that

"we may not entertain due process claims based on correctable procedural errors

unless the alien raised them below"); Rashtabadi v. I.N.S., 23 F.3d 1562, 1567 (9th

Cir. 1994) ("allegations of due process violations are exactly the sorts of

procedural errors which require exhaustion"). And if exhaustion of the procedural

due process claim is required, then the Chenery doctrine must also apply.

The purpose of exhaustion is to give the agency a full opportunity to

consider claims before the claims are submitted for review by a federal court. Sun

v. Ashcroft, 370 F.3d 932, 938 (9th Cir. 2004). Just as exhaustion of procedural

due process claims is required, Chenery also limits this Court's review when the

agency should be the first to review an issue:

> [A] reviewing court, in dealing with a determination or judgment which an
> administrative agency alone is authorized to make, must judge the propriety
> of such action solely by the grounds invoked by the agency. If those grounds
> are inadequate or improper, the court is powerless to affirm the
> administrative decision by substituting what it considers to be a more
> adequate or proper basis.

Securities and Exchange Commission v. Chenery Corp., 332 U.S. at 196.

Further, while courts have exempted the Chenery doctrine from cases

involving the interpretation of a federal statute, that exemption has never applied to

the application of procedural due process. Ry. Lab. Executives' Ass'n v. I.C.C., 784

F.2d 959, 969 (9th Cir. 1986) (Chenery does not apply where "the issue in dispute

25

is the interpretation of a federal statute."); N. Carolina Comm'n of Indian Affs. v.

U.S. Dep't of Lab., 725 F.2d 238, 240 (4th Cir. 1984) (Chenery doctrine does not

apply to issues of pure statutory interpretation. This is an important distinction

because the review of a statute involves the law as Congress wrote it. A procedural

due process argument involves the process that occurred before the agency,

something which the agency has the power to fix at the administrative level,

especially when precedent already establishes the requirements of due process in

Ching.  As the Court noted in Gavrilescu:

> While we agree with the district court that Appellants were required to request cross-examination, the agency appears to have done nothing to implement our holding in *Ching*. So far as the record before us shows, the agency neither informs applicants of their right under *Ching* nor provides a mechanism for a *Ching* hearing. Neither party before us could name a single time when a *Ching* hearing has ever been conducted in the decade since the decision. Though applicants ultimately have the burden to request a *Ching* hearing, we fault the agency for failing to inform applicants of their right under *Ching* and to provide a mechanism to implement that right.

Gavrilescu v. U.S. Dep't of Homeland Sec., No. 23-55036, 2024 WL 2862127, at

*1 (9th Cir. June 6, 2024). There is no reason to exempt the procedural due process

argument from the Chenery doctrine, when the agency had the duty to implement

the due process protections articulated in Ching. As the Board's decision itself

cannot be upheld because it violates Ching, the Board's decision must be vacated.

2.    The Due Process Balancing Test in *Mathews v. Eldridge* Requires the Availability of Cross-Examination of Plaintiff Hanan's First Wife

26

Ching requires the application of the due process test in Mathews v.

Eldridge, 424 U.S. 319, 335, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976), to determine

whether cross-examination of a declarant is required by due process in the

adjudication of a visa petition. Ching v. Mayorkas, 725 F.3d at 1157. In Mathews,

the Supreme Court identified the factors to be considered in determining whether

additional due process is required:

> [I]dentification of the specific dictates of due process generally requires
> consideration of three distinct factors: First, the private interest that will be
> affected by the official action; second, the risk of an erroneous deprivation
> of such interest through the procedures used, and the probable value, if any,
> of additional or substitute procedural safeguards; and finally, the
> Government's interest, including the function involved and the fiscal and
> administrative burdens that the additional or substitute procedural
> requirement would entail.

Id. citing Mathews, 424 U.S. at 335, 96 S.Ct. 893. As discussed below, the

application of the test requires that Ms. Jaimes have been made available for cross-

examination.

### a.    The Private Interest Affected Favors Plaintiffs.

First, the private interest affected by the government's action favors the

couple that filed an I-130 petition. Zerezghi v. United States Citizenship & Immigr.

Servs., 955 F.3d at 810. Plaintiffs have a due process property interest in the

adjudication of the visa petition as it is a mandatory and nondiscretionary petition.

See 8 U.S.C. § 1154(b) ("After an investigation of the facts in each case, ... the

27

[Secretary of Homeland Security ("Secretary")1] shall, if he determines that the facts stated in the petition are true and that the alien on behalf of whom the petition is made is an immediate relative [,] ... approve the petition....").

Ching v. Mayorkas, 725 F.3d at 1157-8, found that this private interest existed because the noncitizen spouse faced removal from the United States and because of the United States citizen spouse's due process liberty interest in remaining in this U.S. with their spouse. But this interest also applies due to the nondiscretionary nature of the visa petition, which by definition created a due process property interest. See Foss v. Nat'l Marine Fisheries Serv., 161 F.3d 584, 588 (9th Cir. 1998) (explaining that procedural due process claims hinge on *both a protected liberty or property interest* and a denial of adequate procedural protections).

In Dep't of State v. Muñoz, __ U.S. __144 S. Ct. 1812, 1824 (2024), the Supreme Court recently held that a United States citizen does not have a constitutional right to reside with their spouse in the United States. Despite this holding, Ching continues to apply due to the mandatory nature of the visa petition. Unlike in Muñoz, which involved the discretionary denial of a consular visa *after* the Form I-130 visa petition was approved, Ching involves the adjudication of the visa petition itself which is not open to room for discretion. The adjudication of a United States citizen Petitioner's visa petition is a separate process from the

28

adjudication of a noncitizen's visa application seeking admission to the United States.  Compare Dep't of State v. Muñoz, 144 S. Ct. at 1820 citing Harisiades v. Shaughnessy, 342 U.S. 580, 588–591, 72 S.Ct. 512, 96 L.Ed. 586 (1952) ("Congress may delegate to executive officials the discretionary authority to admit noncitizens 'immune from judicial inquiry or interference.'")

This is supported by the Court's decision in Zerezghi v. United States Citizenship & Immigr. Servs., 955 F.3d 802, 808 (9th Cir. 2020), where the Court addressed the denial of an I-130 visa petition, and found that due process required the disclosure of derogatory information on which the agency relied in adjudicating the visa petition. Zerezghi's holding is premised on the mandatory nature of the visa petition, as opposed to discretionary, and not the marital relationship. In fact, the Court has held that due process protections apply in other immigration applications that are mandatory adjudications which create a property interest for purposes of due process.  See Brown v. Holder, 763 F.3d 1141, 1148 (9th Cir. 2014) (application for naturalization); ASSE Int'l, Inc. v. Kerry, 803 F.3d 1059 (9th Cir. 2015) (exchange visitor program).

Hence, it is the mandatory nature of the visa petition that creates the due process property interest, which continues regardless of Muñoz.  While Muñoz now mandates a finding that a United States citizen has no due process *liberty* interest in residing with their spouse in the United States, their due process

29

*property* interest nevertheless remains due to the mandatory nature of the Form I-130 petition. This issue was irrelevant in the Muñoz case because the consular visa denial at issue was discretionary, as opposed to the Form I-130 visa petition itself, which is a nondiscretionary adjudication.[4] In ASSE Int'l, Inc. v. Kerry, 803 F.3d 1059, 1073 (9th Cir. 2015), the property interest, which also involved a mandatory and nondiscretionary application, was the lawful adjudication of applications for nonimmigrant visas for exchange visitors.

   ("[A] statute may create a property interest if it mandates a benefit when specific non-discretionary factual criteria are met." Doyle v. City of Medford, 606 F.3d 667, 673 (9th Cir. 2010). A property interest is based on a legitimate claim of entitlement. Wedges/Ledges of California, Inc. v. City of Phoenix, Ariz., 24 F.3d 56, 62 (9th Cir. 1994); Rock River Health Care, LLC v. Eagleson, 14 F.4th 768, 775 (7th Cir. 2021); Wigginton v. Jones, 964 F.3d 329, 336 (5th Cir. 2020); NB ex rel. Peacock v. D.C., 794 F.3d 31, 41 (D.C. Cir. 2015). The property interest at stake here is the lawful adjudication of the marriage-based visa petition which is the first step towards a noncitizen applying for permanent residency in the United States. The interest is Plaintiff Hanan's just as it is Plaintiff Gillum's. Hence, this property interest is distinguishable from the liberty interest rejected in Muñoz.

---

[4] The District Court agreed that Ching continues to apply after Muñoz. ER-23.

The District Court found that the private interests do not weigh in favor of Plaintiffs because their only interests are their desire to live in the United States with each other. ER-24. That is incorrect, and fails to note the property interest at stake in the adjudication of a nondiscretionary petition. Ching v. Mayorkas, 725 F.3d at 1156 (the "grant of an I–130 petition for immediate relative status is a nondiscretionary decision. Immediate relative status for an alien spouse is a right to which citizen applicants are entitled as long as the petitioner and spouse beneficiary meet the statutory and regulatory requirements for eligibility.").

For instance, in Brown v. Holder, 763 F.3d 1141, 1147 (9th Cir. 2014), that protected interest was being able to apply for citizenship, which is nondiscretionary. See also Miriyeva v. U.S. Citizenship & Immigr. Servs., No. 20-CV-2496 JLS (BGS), 2022 WL 837422, at *12 (S.D. Cal. Mar. 21, 2022) ("The Ninth Circuit has held that naturalization applicants have a property interest in seeing their applications adjudicated lawfully. Brown v. Holder, 763 F.3d 1141, 1147 (9th Cir. 2014)."); Wagafe v. Trump, No. C17-0094-RAJ, 2017 WL 2671254, at *8 (W.D. Wash. June 21, 2017) ("The Ninth Circuit, and other courts, have held that naturalization applicants have a property interest in seeing their applications adjudicated lawfully.")

And finally, unlike in Muñoz, the Form I-130 visa petition decision directly pertains to Plaintiff Melanie Hanan as the petitioner. ER-40; ER-86; ER-379. She

filed the Form I-130 petition and the denial of the petition is in her name. It is the

U.S. citizen petitioner who holds a property interest in the adjudication of the I-

130. Hence, unlike in Muñoz which involved a spouse asserting the procedural due

process rights of her husband, Plaintiff Hanan is not asserting the rights of

"someone else's" visa denial. Dep't of State v. Muñoz, __ U.S. __144 S. Ct. at

1827. She is asserting her own procedural due process rights.

As both Plaintiffs have a property interest in the adjudication of the

nondiscretionary marriage-based petition, the first *Mathews* factor weighs in favor

of Plaintiffs.

> **b.     Plaintiffs Face a Risk of Erroneous Deprivation
> Without the Availability of Cross-Examination**

The second factor from Mathews, the risk of erroneous deprivation, is

significant.  Ching v. Mayorkas, 725 F.3d at 1158. Here, the only evidence of

marriage fraud is from statements that were made where the declarant was not

subject to cross-examination. As the Ching decision notes, cross-examination of

the ex-spouse who claims marriage fraud is vital where the spouse may be by

motivated by "malice, vindictiveness, intolerance, prejudice, or jealousy" or where

a confession may be the result of intimidation or coercion. Ching, 725 F.3d at

1156.

Further, as in Ching, cross examination was vital in this case.  As the Ching

decision notes, cross-examination of the ex-spouse who claims marriage fraud is

vital where the spouse may be by motivated by "malice, vindictiveness, intolerance, prejudice, or jealousy" or where a confession may be the result of intimidation or coercion.  <u>Ching</u>, 725 F.3d at 1156.  Two things are notable about Ms. Jaimes's statement on its face.

The first is the use of the language "the whole purposes of us doing this married thing was for him to get his papers and for me to get extra cash. ER-167. The term "whole purpose" appears very close to the legal term "sole purpose" which is frequently used in describing marriage fraud.  <u>See</u> <u>Renaudin v. Immigr. & Naturalization Serv</u>., 516 F.2d 582, 582 (8th Cir. 1975) (describing a sham marriage as "for the sole purpose of evading the immigration laws"); <u>United States v. Khidiro</u>v, 538 F. App'x 877, 880 (11th Cir. 2013) (ex-spouse testified that "the sole purpose of the marriage was for Khidirov to obtain permanent resident status."); <u>Avitan v. Holder</u>, No. C-10-03288-JCS, 2011 WL 499956, at *4 (N.D. Cal. Feb. 8, 2011) ("As the petitioner had entered into a marriage with Yehuda Avitan for the sole purpose to obtain immigration benefits, no subsequent visa petition filed on his behalf may be approved."); <u>Ruhe v. Barr,</u> No. 218CV03734ABAGRX, 2019 WL 4492953, at *2 (C.D. Cal. June 26, 2019) ("USCIS concluded that Ms. Turner and Mr. Guerrero had committed marriage fraud by entering into a marriage for the sole purpose of evading immigration laws.")  This suggests that the term was dictated to Ms. Jaimes and she misheard

33

the term as "whole purpose," implying that the statement itself was orally dictated to her, which may be coercion, or at a minimum questions the veracity of the statement.

The second notable statement is that Plaintiff Hanan asked Ms. Jaimes to move to San Francisco and she refused, which resulted in the breakdown of the marriage. ER-167. Clearly a request for a joint move to another city is not consistent with a marriage entered into solely for immigration purposes. Matter of Phillis, 15 I&N Dec. 385 (BIA 1975) (evidence showing the parties' conduct after a marriage is relevant to their intent at the time of their marriage). Hence the statement that the "whole purpose" of the marriage was for Mr. Hanan's immigration paperwork and money for her is contradicted by the statement that Plaintiff Hanan wanted Ms. Jaimes to move to San Francisco.

This District Court found that the Board did not solely rely on Ms. Jaimes's statement to issue the 8 U.S.C. § 1154(c)(2) finding. ER-26. But what the lower court fails to note is that it was required to consider whether USCIS met the high standard of proof, of *at least a preponderance of the evidence*, without Ms. Jaimes' statement. Matter of P. Singh, 27 I. & N. Dec. 598, 611 (BIA 2019). As discussed below, the 2011 BGC report is not enough to meet that burden, and there is no other direct or circumstantial evidence of marriage fraud. The *absence* of evidence

of a valid marriage is not enough for USCIS to meet its burden. <u>Matter of P. Singh</u>, 27 I. & N. Dec. at 611.

As discussed further, the burden only shifts to Plaintiffs if USCIS first meets *its* burden of establishing by substantial and probative evidence (by more than a preponderance of the evidence) that the marriage was entered into for immigration benefits. "[W]here there is evidence in the record to indicate that the beneficiary has been an active participant in a marriage fraud conspiracy, the burden shifts to the petitioner to establish that the beneficiary did not seek nonquota or preference status based on a prior fraudulent marriage." <u>Matter of Kahy</u>, 19 I. & N. Dec. 803, 806–07 (BIA 1988). As the government's evidence could not have met the high standard of 8 U.S.C. § 1154(c)(2) without the admission of Ms. Jaimes, then the inquiry should have stopped. Again, the Board could have found that Ms. Jaimes and Plaintiff Hanan did not establish that the marriage was entered into in good faith. But there was not enough evidence to find that it was entered into solely for immigration purposes in order to invoke § 1154(c)(2), based on the 2011 BGC report alone.

The District Court's decision ignores the burden shifting framework in the <u>Ching</u> analysis. Instead, the District Court then went on the reject the evidence provided by Plaintiffs as to the bona fides of the marriage between Plaintiff Hanan and Ms. Jaimes. ER-27.  The court contrasts the rebuttal evidence with the

evidence presented in <u>Ching</u>, but that does not mean that Plaintiffs do not meet the test for erroneous deprivation. The evidence still establishes that this was a short impulsive marriage when the parties were only ages 23 and 19. ER-386; ER-163. While they did not have a lease together, Ms. Jaimes did know Plaintiff Hanan's family and they were aware of the marriage, and Plaintiff Hanan explained in his statement that he wanted to move to San Francisco and she refused. ER-164. <u>Compare</u> <u>Matter of P. Singh</u>, 27 I. & N. Dec. at 609 ("Statements from family members, employers, or acquaintances indicating they do not know about the marriage or that the parties told them the marriage is a sham are additional indicia of fraud.")

The District Court also failed entirely to take into account <u>Ching's</u> statement that:

> the risk of an erroneous finding that a prior marriage was fraudulent is high in cases where an ex-spouse is relied upon for evidence that the previous marriage was fraudulent. Here, for example, USCIS officers went to Fong's home and solicited from him his six-sentence statement; the BIA concluded on the basis of this "detailed" statement alone that the prior marriage was fraudulent. An unexpected visit from government officers can be quite intimidating, particularly if the officials point out that having filed a fraudulent I–130 petition could result in a $250,000 fine and imprisonment for up to five years.

<u>Ching v. Mayorkas</u>, 725 F.3d at 1157–58. That same reasoning applies to Ms. Jaimes's statement, and the threat of intimidation is high in a case like this where

36

the parties were young and the marriage is short lived, as Ms. Jaimes could have

faced substantial penalties for marriage fraud.

### c. The Government's Interest is Minimal

Third, "the Government's interest, including the function involved and the

fiscal and administrative burdens that the additional or substitute procedural

requirement would entail"—similarly favors Plaintiffs. Ching v. Mayorkas, 725

F.3d at 1159 ("because the process sought by Plaintiffs is guaranteed to aliens in

removal proceedings, there are no practical problems with such a requirement.")

The District Court agreed that this third factor favors Plaintiffs. ER-28. The

reality is that Plaintiff Hanan is subject to removal for overstaying his visa, and can

be placed into removal proceedings at any time. 8 U.S.C. § 1227(a). Hence, if

USCIS wished to rely on Ms. Jaimes' statement, then it easily could have placed

him into removal proceedings where he would have had the availability of cross-

examination.

### d. Plaintiffs Suffered Prejudice as a Result of the BIA's reliance on Ms. Jaimes's Statement

In Ching, the Court noted that ("[t]he question of whether a plaintiff must

demonstrate prejudice in the context of an I–130 visa petition is not settled.").

Ching v. Mayorkas, 725 F.3d at 1156. Notably, neither ASSE Int'l, Inc. v. Kerry,

803 F.3d 1073 or Brown v. Holder, 763 F.3d at 1148, which are both due process

cases that do not involve removal proceedings, do not require a showing of

37

prejudice in order to succeed on the due process claim. Further, there is support in the due process analysis that some violations are inherently prejudicial and therefore do not require an independent showing of prejudice. Deck v. Missouri, 544 U.S. 622, 635, 125 S. Ct. 2007, 2015, 161 L. Ed. 2d 953 (2005) ("where a court, without adequate justification, orders the defendant to wear shackles that will be seen by the jury, the defendant need not demonstrate actual prejudice to make out a due process violation."); Baltazar-Alcazar v. I.N.S., 386 F.3d 940, 947 (9th Cir. 2004) ("The Ninth Circuit has yet to decide whether prejudice is required when a petitioner has demonstrated denial of the right to counsel in deportation proceedings."); Montilla v. I.N.S., 926 F.2d 162, 169 (2d Cir. 1991) (an alien claiming the INS has failed to adhere to its own regulations regarding the right to counsel in a deportation hearing is not required to make a showing of prejudice before he is entitled to relief.")

However, to some extent, the prejudice analysis collapses with the "risk of erroneous deprivation" test which is the second prong of the Mathews inquiry. Prejudice requires only a showing that the outcome of "the proceeding may have been affected by the alleged violation." Colmenar v. I.N.S., 210 F.3d 967, 971 (9th Cir. 2000). This is similar to assessing whether Plaintiffs faced a risk of an erroneous denial of the visa petition based on the BIA's reliance on Ms. Jaimes' statement.

Clearly the lack of availability for cross examination potentially affected the outcome of proceeding, given the "more than probably true" burden of proof required for 8 U.S.C. § 1154(c) findings.  Matter of Singh, 27 I. & N. Dec. 598, 607 (BIA 2019).  Without cross- examination, Plaintiffs were not able to question Ms. Jaimes about meeting Plaintiff Hanan's father, traveling to Las Vegas to meet his relatives, the proposal to move to San Francisco, the financial assistance Plaintiff Hanan gave to Ms. Jaimes as a supportive spouse, about her alcohol abuse, a cousin named "Mike" who she asserts arranged the marriage fraud, and about the terms under which the statement was given to immigration officials. ER-167.  Without the alleged admission from Ms. Jaimes, there may not have been enough evidence to issue a finding under § 1154(c), just as in Ching.

C.     THE BOARD'S DECISION IS NOT SUPPORTED BY SUBSTANTIAL AND PROBATIVE EVIDENCE AND FAILED TO PROPERLY CONSIDER PLAINTIFF'S EVIDENCE

Next, the Board's decision denying the visa petition must be reversed because it is "arbitrary, capricious, an abuse of discretion, or otherwise not in accordance with law." 5 U.S.C. § 706(2)(A). The agency may deny an immigration petition if there is "substantial and probative evidence" that the noncitizen "has attempted or conspired to enter into a marriage for the purpose of evading the immigration laws." 8 C.F.R. § 204.2(a)(1)(ii). The government bears the initial burden of proof. Zerezghi v. United States Citizenship & Immigr. Servs., 955 F.3d

802, 813 (9th Cir. 2020). "If it produces substantial and probative evidence of marriage fraud, the burden shifts to the petitioner to rebut the allegation." Id. "If the petitioner cannot rebut the charge to the [agency's] satisfaction, the petition is denied." Id. at 805. The "substantial-and-probative-evidence standard is a standard of proof, which is at least as high as a preponderance of the evidence." Id. at 816. "Given that the consequence of engaging in marriage fraud under section 204(c) of the Act [8 U.S.C. § 1154(c)] is a permanent bar to the approval of any future visa petition, the evidence of fraud must be relatively high to trigger the bar." Matter of P. Singh, 27 I. & N. Dec. at 607.

The standard for marriage fraud in this circuit requires a determination of whether "the bride and groom did not intend to establish a life together at the time they were married." United States v. Orellana-Blanco, 294 F.3d 1143, 1151 (9th Cir. 2002). "[I]if one spouse intended the marriage to be a sham when the ceremony took place, but the other intended it to be genuine, then the one committed marriage fraud but not the other." Id. "An intent to obtain something other than or in addition to love and companionship from that life does not make a marriage a sham. Rather, the sham arises from the intent not 'to establish a life together.'" Id. In analyzing whether a couple intended to establish a life together at the time they were married, the Court must "examine the objective evidence that would support a finding that the couple entered into the marriage with an intent to

establish a life together—including evidence of whether [the parties were listed on each other's] insurance policies, property leases, income tax forms or bank accounts; testimony or other evidence regarding their courtship, wedding ceremony; and evidence concerning whether they shared a residence." <u>Nakamoto v. Ashcroft</u>, 363 F.3d 874, 882 (9th Cir. 2004).

"The concept of establishing a life as marital partners contains no federal dictate about the kind of life that the partners may choose to lead. Any attempt to regulate their life styles, such as prescribing the amount of time they must spend together, or designating the manner in which either partner elects to spend his or her time, in the guise of specifying the requirements of a bona fide marriage would raise serious constitutional questions." <u>Bark v. Immigr. & Naturalization Serv</u>., 511 F.2d 1200, 1201 (9th Cir. 1975). "Conduct of the parties after marriage is relevant only to the extent that it bears upon their subjective state of mind at the time they were married." <u>Id</u>. at 1202.

The Board's April 12, 2023 decision relies on the following evidence to establish that Plaintiff Hanan did not intend to establish a life with Ms. Jaimes when they were married:

- A November 3, 2016 statement of Ms. Jaimes, which was not subject to cross-examination, that "in exchange for money, she married the

41

beneficiary to help him get lawful permanent resident status" and they never lived together. ER-119;

- A July 6, 2011 alleged admission from Plaintiff Hanan that the marriage to Ms. Jaimes was a "sham" that had been arranged in relation to illegal slot machine distribution. ER-110.

The District Court reviewed the statement of Ms. Jaimes for purposes of the marriage fraud analysis, after rejecting Plaintiffs' argument that due process required the availability to cross-examine Ms. Jaimes. ER-26. The Court relied on her written admission that she was paid $1500 to $2,000 for the marriage to Hanan, in which she stated that the "whole purpose" of the marriage was "to get his papers and for me to get extra cash." ER-27 citing ER-119. Notably, no immigration papers were ever filed in the case. She does not explain why this was not done, if that was the "whole purpose" of the marriage. ER-119. She also claimed the marriage was arranged through Plaintiff Hanan's cousin Mike, and he claims he has no such cousin. ER-119; ER-164.

The District Court stated that it was not for the court to reweigh the evidence and to substitute its opinions on credibility. ER-29. The fatal error in this assessment is that the court relied on a statement in which there was no availability of cross-examination. The Board and the Court were not in a position to deem Ms. Jaimes credible when she was not subject to cross-examination on such a vital

issue. In Plaintiff Hanan's sworn statement, he noted that Ms. Jaimes was "very emotional and yelled a lot in our relationship. She abused alcohol even though she was underage. I did not support her in the abuse." When she drank she became "more unstable." ER-164. He also noted that "her account is not accurate and, from my experience, she is unstable, abuses alcohol, and is probably angry about the divorce." Id. Given the inconsistency in Ms. Jaimes' statement and the lack of availability for cross-examination, this statement cannot constitute substantial and probative evidence of marriage fraud, as set forth in Matter of P. Singh, 27 I. & N. Dec. at 606.

As Ms. Jaimes was not subject to cross-examination, the statement should not have been relied upon at all under Ching v. Mayorkas. It certainly does not meet the P. Singh high standard of substantial and probative evidence of marriage fraud. This then leaves the 2011 alleged admission to marriage fraud that was made to gambling California gambling authorities. ER-110.

The author of the report is redacted. ER-106. There can be no presumption of reliability for a government issued document when the author is not revealed, as it cannot be verified that the author was a government official acting in his official capacity and in their regular course of duties. See e.g. Espinoza v. I.N.S., 45 F.3d 308, 310 (9th Cir. 1995), as amended on denial of reh'g (Jan. 12, 1995) ("an authenticated immigration form is presumed to be reliable in the absence of

evidence to the contrary presented by the alien."); Lopez-Chavez v. I.N.S., 259

F.3d 1176, 1181 (9th Cir. 2001) (presumption of reliability for government issued

document requires authentication). The District Court states that it was BCG that

redacted the report, and the Board did not rely on "any evidence that is redacted in

determining that the beneficiary engaged in marriage fraud. ER-30 citing ER-104.

In fact, USCIS states in a Notice of Intent to Deny that "though the report here was

redacted by another law enforcement agency, it provides you with the beneficiary's

admissions regarding the bona fides of his first marriage. … USCIS has not relied

on any evidence that is redacted in determining that the beneficiary engaged in

marriage fraud."  ER-104.

     The statement that USCIS did not rely on redacted information does not

address the point of unreliability raised by Plaintiffs. There is a presumption of

reliability that attaches to documents that are created by government officials, and

that presumption cannot attach when the official's name is redacted. As such, this

memorandum becomes a statement from a non-government official which Plaintiff

Hanan disputes. Further, the redaction's failure to identify the review officer leaves

Plaintiffs without the notice that is required under Zerezghi, and unable to subject

the declarant to cross-examination under Ching.  See Zerezghi v. United States

Citizenship & Immigr. Servs., 955 F.3d at 813 ("[g]iven the harsh effects of a

marriage-fraud determination, Zerezghi and Meskel are entitled to at least the

44

complete administrative record on which USCIS and the BIA relied in reaching its determinations, including any and all documents that the couple were not given prior to the agency making its decisions.")  As such, the 2011 redacted California gambling authorities memorandum is insufficient to meet the government's burden of establishing substantial and probative evidence of marriage fraud.

The report also generally lacks indicia of reliability and Plaintiff Hanan contests the contents of the statement as it pertains to an arrangement of a marriage for a green card.  ER-110. He contests that he made a statement that his marriage was for the purposes of a green card and that he was told to pay $250 a month until he received his green card. ER-110; ER-163 to ER-165. This statement is entirely unreliable when the July 6, 2011 report states that immigration paperwork already was filed by an attorney named "George" and that Plaintiff Hanan had already filed for divorce from Ms. Jaimes. ER-110.  This interview was on July 6, 2011, more than a year after the May 15, 2010 marriage, and no immigration paperwork had been filed, showing that the report was factually inaccurate. ER-386.

In addition, the report does not meet the substantial and probative standard because it states that Plaintiff Hanan stated that he was told to pay $250 a month to Ms. Jaimes, while she says in her statement that they agreed to $500 a month, and sometimes she asked for more. ER-110; ER-167. That is a substantial difference, and the report cannot meet the high standard that is required for purposes of §

45

1154(c). Plaintiff Hanan contests that the money was for purposes of a green card, and explained in his March 30, 2017 statement that he provided money to Ms. Jaimes to support her as his spouse, and not for immigration purposes. ER-163 to ER-165.

Last, even if the government had sufficient substantial and probative evidence to meet that preponderance standard, then the burden shifted to Plaintiffs to prove the marriage to Ms. Jaimes was bona fide. The Board's April 12, 2023 decision fails entirely to identify the burden shifting framework. ER-42. The Board does state that Plaintiffs "did not submit evidence of joint residency, joint ownership of property, or commingling of finances to establish the bonafides of the first marriage" but it does not discuss the evidence that was submitted and address whether Plaintiffs met their burden. ER-42.

Further, Plaintiffs do not have to submit "evidence of joint residency, joint ownership of property, or commingling of finances" in order to meet their burden. This list is not exhaustive in order to establish that the parties intended to spend their lives together when they were married. Amar v. Mayorkas, No. CV216752CBMADSX, 2022 WL 18228254, at *5 (C.D. Cal. Dec. 19, 2022).

The Board does not address the documents which were submitted to rebut USCIS' marriage fraud finding, that included 1) photos of Mr. Hanan with Ms. Jaimes at their wedding and of them meeting Plaintiff Hanan's father and sister and

46

together over Christmas; 2) a sworn statement from Plaintiff Hanan's father,

Mordehay Hanan; 3) a sworn statement from Plaintiff Hanan's uncle, Yosef Califa;

and 4) a sworn statement from Jonathan Shiloh Saidman, a close friend of Plaintiff

Hanan's who was present at his wedding to Ms. Jaimes.  ER-143 to ER-158.  The

photos of Ms. Jaimes with Plaintiff Hanan's father and sister were evidence of the

legitimacy of the marriage, as were the sworn affidavits from family members.

Simko v. Bd. of Immigr. Appeals, 156 F. Supp. 3d 300, 315 (D. Conn. 2015).

        The Board never addressed this evidence at all, resulting in a failure to apply

the burden shifting framework. Matter of Kahy, 19 I. & N. Dec. 803, 806–07 (BIA

1988) ("where there is evidence in the record to indicate that the beneficiary has

been an active participant in a marriage fraud conspiracy, the burden shifts to the

petitioner to establish that the beneficiary did not seek nonquota or preference

status based on a prior fraudulent marriage."). The Board was required to do so.

For instance, in Delcore v. Holder, No. 13 CV 8266, 2015 WL 1858363, at *8

(N.D. Ill. Apr. 20, 2015), the district court addressed a marriage case where one

party stated that the couple did not live together, and the other stated they did. Two

statements supported the statement that they lived together, and the evidence was

"slim and equivocal."  Id.  The court held that merely choosing to believe one

spouse over the others "does not satisfy the government's burden of identifying

substantial and probative evidence that the marriage was fraudulent, and in light of

that specific burden of proof, no reasonable person could reach the conclusion reached by the government here."

The District Court found that the Board's decision relied on USCIS' review of the evidence, and that was sufficient consideration of the evidence under the burden-shifting framework. ER-32. The Board's only reference to Plaintiffs' evidence is the statement "[w]e agree with the Director that the petitioner submitted insufficient evidence to establish that the beneficiary's first marriage was bona fide. The petitioner did not submit evidence of joint residency, joint ownership of property, or commingling of finances to establish the bona fides of the first marriage." ER-42. But that statement does not show that the evidence was considered. That statement sets forth that the failure to "submit evidence of joint residency, joint ownership of property, or commingling of finances" means that Plaintiffs did not meet their burden. In fact, evidence of joint residency, joint ownership of property, or commingling of finances are not *required* in order to meet the burden. While that may be evidence that a marriage is bona fide, the only inquiry is if the parties "did not intend to establish a life together at the time they were married." Bark v. Immigr. & Naturalization Serv., 511 F.2d 1200, 1201 (9th Cir. 1975). Plaintiffs did submit sworn statements from family and friends and photos, and that evidence by itself *can* be enough to meet the bona fide standard.

48

Substantial and probative evidence did not establish by at least clear and convincing evidence that Plaintiff Hanan and Ms. Jaimes did not intend to establish a life together when they were married. Further, even if that was established, the Board failed to follow the proper burden-shifting framework to consider whether Plaintiffs' evidence rebutted that presumption and failed to consider Plaintiffs' evidence at all, requiring reversal.

### D. THE DENIAL OF ADJUSTMENT OF STATUS VIOLATES THE APA BECAUSE THE VISA PETITION SHOULD HAVE BEEN APPROVED

The Form I-485 Application for Adjustment of Status was denied in this case because the visa petition was denied. ER-379. As the visa petition should have been approved, the denial of the application for adjustment of status was arbitrary, capricious, and contrary to law. 5 U.S.C. § 706(2)(A). As such, the application should be reopened and adjudicated pursuant to 8 U.S.C. § 1255(a).

## IX. CONCLUSION

For all the above reasons, the Court should reverse the decision of the lower court and order that the BIA's denial of Plaintiffs' petition based on 8 U.S.C. § 1154(c)(2) be vacated.

49

Dated:  December 20, 2024               Respectfully submitted,


Stacy Tolchin
Megan Brewer
LAW OFFICES OF STACY TOLCHIN
776 E. Green St.
Suite 210
Pasadena, California 91101
Telephone: (213) 622-7450
Facsimile: (213) 622-7233
Email: Stacy@tolchinimmigration.com
Email: Megan@tolchinimmigration.com

Attorneys for Plaintiffs-Appellants


s/Stacy Tolchin
by: Stacy Tolchin

<u>STATEMENT OF RELATED CASES</u>

Pursuant to Ninth Circuit Rule 28-2.6, Plaintiffs-Appellants are aware the following related case.

<u>Samuels v. USCIS</u>, No. 24-6280.

DATED: December 20, 2024                    s/ <u>Stacy Tolchin</u>
                                            Stacy Tolchin
                                            Attorney for Plaintiffs-Appellants

CERTIFICATE OF COMPLIANCE TO
FED. R. App. P. 32 (a)(7)(C) AND NINTH CIRCUIT
RULE 32-1 FOR CASE NUMBER  No. 24-6193

I certify that:

Pursuant to Fed. R. App. P. 32(a)(7)(C) and Ninth Circuit Rule 32-1, the
attached opening brief is

X        Proportionately spaced, has a typeface of 14 points or more and
         contains 12001  words, (opening, answering, and the second and third
         party briefs filed in cross-appeals must not exceed 14,000 words;
         reply briefs must not exceed 7,000 words),
         OR IS

☐        Monospaced, has 10.5 or less characters per inch and contains
         words or_____ lines of text (opening, answering, and the second
         and third briefs filed in cross-appeals must not exceed 14,000 words
         or 1,300 lines of text; reply briefs must not exceed 7,000 words or 650
         lines of text)

2.       The attached opening/answering/reply/cross-appeal brief is not subject to the
         type-volume limitations of Fed. R. App. P. 32(a)(7)(B) because

☐        This brief complies with Fed. R. App. 32(a)(1)-(7) and is a principal
         brief of no more than 30 pages or a reply brief of no more than 15
         pages;

☐        This brief complies with a page or size-volume limitation established
         by separate court order dated  _____ and is

   ☐        Proportionately spaced, has a typeface of 14 points or more and
            contains _____ pages or _____ words,
   OR IS

   ☐        Monospaced, has 10.5 or fewer characters per inch and contains
            pages or _____ words or _____ lines of text.

3.    ☐     Pursuant to Fed. R. App. 29(d) and Ninth Circuit  Rule 32-1,  the
            attached AMICUS BRIEF is proportionally spaced, has a type face of
            14 points or more and contains 7,000 words or less,
            OR IS

☐     Monospaced, has 10.5 or fewer characters per inch and contains not more than 7,000 words or 650 lines of text,
OR IS

☐     Not subject to the type-volume limitations because it is an amicus brief of no more than 15 pages and complies with Fed. R. App. P. 32(a)(1)(5).

DATED: December 20, 2024        <u>s/Stacy Tolchin</u>
                                    Stacy Tolchin
                                    Attorney for Plaintiffs-Appellants

<u>PROOF OF SERVICE BY ELECTRONIC FILING</u>

I, Stacy Tolchin, the undersigned, say:

I am over the age of eighteen years and not a party to the within action or proceedings; my business address is: Law Offices of Stacy Tolchin, 776 E. Green St. Suite 210, Pasadena, CA 91101.

On December 20, 2024, I electronically filed:

PLAINTIFFS-APPELLANTS' OPENING BRIEF

with the Clerk of Court for the United States Court of Appeals for the Ninth Circuit by using the appellate CM/ECF system.

I certify that all participants in the case are registered CM/ECF users and that service will be accomplished by the appellate CM/ECF system.

s/ <u>Stacy Tolchin</u>

iv